IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HILDA HERNANDEZ-KEE,　　　　　　　　　　　　Case No.

    Plaintiff

v.　　　　　　　　　　　　　　　　　　　　　　JURY TRIAL DEMANDED

COAST PROFESSIONAL, INC.,
a California Corporation,

    Defendant.
_____/

COMPLAINT FOR UNLAWFUL DEBT COLLECTION PRACTICES
AND DEMAND FOR JURY TRIAL

I.　　INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq* (hereinafter "FDCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq* (hereinafter "FCCPA"), and the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 *et seq* (hereinafter "RFDCPA"); these laws prevent debt collectors and "persons" from, *inter alia*, engaging in abusive, deceptive, harassing, and unfair collection practices.

II.　　JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1337, 1367, Fla. Stat. § 559.77(1), and Cal. Civ. Code § 1788.30(f).

3. Venue lies in this District pursuant to 28 U.S.C. § 1391(d), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

### III. PARTIES

4. Plaintiff, HILDA HERNANDEZ-KEE (hereinafter "Plaintiff"), is an individual who resides in the County of Hillsborough, State of Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and Fla. Stat. § 559.55(2), is a "debtor," as that term is defined by Cal. Civ. Code § 1788.2(h), and is also a person with standing to bring a claim under the FDCPA by virtue of being directly affected by a violation of the Act.

5. Defendant, COAST PROFESSIONAL, INC., (hereinafter "Coast" or "Defendant"), is a for-profit entity incorporated under the laws of California, with its principal place of business located at 8105 IRVINE CENTER DR SUITE 700 IRVINE CA 92816; Defendant is a "debt collector," as that term is defined by 15 U.S.C. § 1692a(6), Fla. Stat. § 559.55(6), and Cal. Civ. Code § 1788.2(c), and is also an "out-of-state consumer debt collector," as that term is defined by Fla. Stat. § 559.55(8).

### IV. FACTUAL ALLEGATIONS

**Third-Party Phone Call – November 2010**

6. In or around November 2010 a female representative of Defendant placed a call to Plaintiff's friend on the friend's cellular telephone.

7. The caller stated to Plaintiff's friend that she [the caller] was calling to "verify [Plaintiff's] employment."

8. Plaintiff's friend was cautious to give any personal information to the caller and advised that she is not Plaintiff's employer but that she can take a message for Plaintiff.

9. The female caller left a phone message with Plaintiff's friend, which included a telephone number for Plaintiff, and asked for Friend to have Plaintiff return the call.

10. Later that day, when Plaintiff received the message from Friend, Plaintiff dialed the telephone number left in the message and eventually was on the line with a female representative of Defendant.

11. Plaintiff asked the representative why Defendant had called her friend.

12. The representative replied that Plaintiff was being "investigated" and that was why Plaintiff's friend was called.

13. Plaintiff asked the representative how they obtained the friend's phone number.

14. The representative informed Plaintiff that Defendant found Plaintiff's name listed on a website which was operated by the friend.

15. The website was created for a recreational jogging group in which Plaintiff participates and which Plaintiff's friend operates.

16. Plaintiff advised the representative to never call her friend again, and further asked the representative to clarify Defendant's purpose of calling.

17. The representative again stated that Plaintiff was being investigated, this time stating that it was due to Plaintiff's default of student loan payments.

18. Plaintiff asked the representative to have Defendant forward documentation related to the alleged defaulted debt.

19. The representative stated that Plaintiff has been sent numerous letters and verified Plaintiff's home address.

20. Plaintiff explained that she has never received any documents from Defendant.

21. In response, Defendant's representative repeatedly called Plaintiff a "liar."

22. After Plaintiff asked to speak with the representative's supervisor, the representative hung up the phone.

23. Upon information and belief Plaintiff has received no written correspondence from Defendant, despite Defendant's statements to the contrary.

### Third-Party Phone Call – February 9, 2011

24. On or about February 9, 2011 Defendant placed another call to Plaintiff's friend regarding Plaintiff's debt.

25. Defendant requested some of Plaintiff's personal information from the friend, who told Defendant that she would not provide the caller with any of Plaintiff's personal information.

26. The representative left information with Plaintiff's friend to pass along to Plaintiff.

27. The message included information related to the debt, including a telephone number for Plaintiff to call, and a full account "reference number" (redacted within this civil complaint as #XXX220).

28. As a result of the multiple phone calls placed to Plaintiff's friend, Plaintiff requested that her friend remove her name from the recreational jogging group website.

### Numerous & Harassing Phone Calls to Plaintiff

29. In the weeks following the February 9, 2011 phone call to Plaintiff's friend, Defendant placed numerous phone calls to Plaintiff at her place of employment, as well as on her personal cellular telephone.

30. Plaintiff's employment and cellular phones are equipped with caller identification technology and thus Plaintiff knew who was calling when the phones would ring.

31. Due to the lack of privacy in Plaintiff's workspace, Plaintiff was fearful to answer the phone as she did not want to discuss her private matters in front of coworkers.

32. Despite Plaintiff's phone also being equipped with voicemail message technology, Defendant did not leave messages for Plaintiff following the unanswered calls.

33. As a result, Plaintiff did not return any phone calls to Defendant.

### Phone Call to Plaintiff's Employer – March 1, 2011

34. On or about March 1, 2011 a representative of Defendant called Plaintiff's place of employment and requested to speak with administration.

### Phone Call to Plaintiff's Employer – March 2, 2011

35. On or about March 2, 2011 a female representative of Defendant called Plaintiff's place of employment, once again requesting to speak with administration.

36. The caller stated that she had a complaint to file regarding Plaintiff and wanted to speak with Plaintiff's boss, so the call was transferred to the vice president of Plaintiff's employer.

37. After receiving this call, the vice president of Plaintiff's place of employment called Plaintiff's director into her office to address this phone call.

38. During this phone call, the caller identified herself as Stacy Norcross, and advised the vice president that she needed to verify Plaintiff's employment.

39. The vice president and director were concerned that Plaintiff was looking for another job Norcross was asked what the complaint was that Norcross had against Plaintiff.

40. Representative Norcross advised the vice president and director that her complaint was that Plaintiff had not returned any of Norcross' calls.

41. Norcross left a call back number and a "reference number" to pass to Plaintiff.

**Conversation with Defendant – March 2, 2011**

42. On or about March 2, 2011, Plaintiff was called in to speak with her superiors who expressed concern over the call from Norcross.

43. Plaintiff was forced to divulge information regarding Defendant's identity and the substance of the calls to assure her superiors that the call was not work-related, and that Plaintiff was not seeking new employment.

44. Plaintiff explained to her superiors that the reason why she didn't return Norcross' phone calls was because Norcross never left messages on Plaintiff's phones.

45. Following the meeting with her superiors Plaintiff called Representative Norcross at the provided phone number.

46. Plaintiff advised Norcross that she must cease calling her friends, her work number, her co-workers, and her superiors.

47. Norcross stated that she called Plaintiff's superiors because Plaintiff would not return her calls.

48. Plaintiff stated that she never returned the calls because Norcross never left messages.

49. Norcross advised that she is not allowed to leave messages.

50. Plaintiff responded by asking rhetorically, "But it's OK for you to call my friends and superiors and leave messages for me with them?"

51. Norcross advised Plaintiff that if she paid Defendant $20,000 then she'd stop calling Plaintiff's friends and employer.

52. Plaintiff then advised Norcross that she had filed a complaint with the FTC regarding Defendant's actions in collecting this debt, and gave Norcross the reference number.

53. Norcross advised Plaintiff that the call was being recorded, and then asked Plaintiff, "So are you saying you are not willing to pay this debt?"

54. Plaintiff told her that she was not refusing to pay, but that she would follow up with the Department of Education ("DoE") to work out her options.

55. Norcross advised that DoE would simply advise Plaintiff to call Defendant.

56. Norcross then asked Plaintiff if she would like to speak with Norcross' manager, to which Plaintiff replied that she would not, as she would simply give him the same information that was given to Norcross.

57. Despite the declination, Norcross then transferred Plaintiff to her manager, a male by the name of John Prince, who stated that he was the Director of Operations.

58. Prince stated that he wanted to verify Plaintiff's FTC complaint information.

59. Plaintiff provided the same information to Prince which had been provided to Norcross and ended the call by requesting of Prince that Defendant no longer call her friends or her employer, as her employment is being jeopardized with each phone call.

## Common Allegations

60. Defendant Coast was attempting to collect a defaulted student loan obligation originally owed to the United States Department of Education, which was incurred for Plaintiff's personal, family, or household purposes, and is therefore a "debt" or "consumer debt," as those terms are defined by 15 U.S.C. § 1692a(5), Fla. Stat. § 559.55(1), and Cal. Civ. Code § 1788.2(f).

61. It is alleged that Defendant's actions were performed with the intent to coerce Plaintiff into paying a defaulted consumer debt.

62. Defendant's third-party communications with Plaintiff's friend during the November 2010 and February 2011 telephone calls, for purposes other than acquiring, confirming, or correcting Plaintiff's location information, was violative of the FDCPA.

63. Defendant's failure to send Plaintiff the written notice required by 15 U.S.C. § 1692g(a), despite Defendant's statements otherwise, was violative of the FDCPA.

64. All acts or omissions of the employees/agents of Defendant were performed within the scope of their respective employment/agency with Defendant, thus subjecting Defendant to vicarious liability for these acts under a doctrine of *respondeat superior*.

65. Defendant's attempts to collect this debt caused Plaintiff mental anguish in the forms of stress, worry, and fear that she may lose her job, and therefore her ability to pay for costs of living.

66. Defendant's various disclosures of information to third-parties, false and otherwise, caused Plaintiff great harm to her personal and professional reputation.

V.   CLAIMS FOR RELIEF

First Claim for Relief
Violations of the Federal Fair Debt Collection Practices Act

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 66.

67. The foregoing acts and omissions of Defendant and its employees/agents constitute numerous and several violations of the FDCPA, including, but not limited to, 15 U.S.C. §§ 1692b(3), 1692c(b), 1692d generally, 1692e generally, 1692e(10), 1692f generally, and 1692g(a).

68. As a result of the above violations of the FDCPA, Plaintiff is entitled to a declaratory judgment that Defendant's conduct violated the FDCPA, and recovery for actual damages, statutory damages, and attorney's fees and costs.

<u>Second Claim for Relief</u>
Violations of the Florida Consumer Collection Practices Act

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 66.

69. The foregoing acts and omissions of Defendant and its employees/agents constitute violations of the FCCPA, including, but not limited to, Fla. Stat. § 559.72(7).

70. As a result of Defendant's violation of the FCCPA, Plaintiff is entitled to a declaratory judgment that Defendant's conduct violated the FCCPA, and recovery for actual damages, statutory damages, punitive damages, and attorney's fees and costs.

<u>Third Claim for Relief</u>
Violations of the California Rosenthal Fair Debt Collection Practices Act

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 66.

71. The foregoing acts and omissions of Defendant and its employees/agents constitute violations of the RFDCPA, including, but not limited to, Cal. Civ. Code §§ 1788.12(a), and 1788.17.

72. As a result of Defendant's willful and knowing violations of the RFDCPA, Plaintiff is entitled to a declaratory judgment that Defendant's conduct violated the RFDCPA, and recovery for actual damages, statutory damages, and attorney's fees and costs.

VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment against Defendant for the following:

a. Equitable relief in the form of a Declaratory Judgment that Defendant's acts constituted violations of the FDCPA, FCCPA, and the RFDCPA, pursuant to Fla. Stat. § 559.77(2);

    b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1), Fla. Stat. § 559.77(2), and Cal. Civ. Code § 1788.30(a);

    c.    Statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), Fla. Stat. § 559.77(2), and Cal. Civ. Code § 1788.30(b);

    d.    Punitive damages, pursuant to Fla. Stat. § 559.77(2);

    e.    Costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3), Fla. Stat. § 559.77(2), Cal. Civ. Code § 1788.30(c); and

    f.    Such other and further relief as may be just and proper.

    Respectfully submitted,

/s/ Joseph B. Battaglia
G. Donald Golden, Fla. Bar No.: 0137080
don@brandonlawyer.com
David S. Bromley, Fla. Bar No.: 0155349
david@brandonlawyer.com
Joseph B. Battaglia, Fla. Bar No. 0058199
joe@brandonlawyer.com
THE GOLDEN LAW GROUP
808 Oakfield Drive, Suite A
Brandon, Florida 33511
Telephone:  (813) 413-8700
Facsimile:   (813) 413-8701
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff demands trial by jury in this action.

/s/ Joseph B. Battaglia
G. Donald Golden, Fla. Bar No.: 0137080
David S. Bromley, Fla. Bar No.: 0155349
Joseph B. Battaglia, Fla. Bar No. 0058199